James MELTON, Plaintiff–Appellant,

v.

**TIPPECANOE COUNTY,**
Defendant–Appellee.

No. 14–3599

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 2016

Decided September 22, 2016

Ronald E. Weldy, Attorney, Barker Hancock Cohron, Noblesville, IN, for Plaintiff-Appellant.

Douglas J. Masson, Attorney, Hoffman, Luhman & Masson, Lafayette, IN, for Defendant-Appellee.

Before MANION and KANNE, Circuit Judges, and PEPPER, District Judge.*

KANNE, Circuit Judge.

After he disregarded an order from his supervisor that he could not change his schedule to make up for missed time,

Plaintiff James Melton was discharged from his job at the Tippecanoe County Surveyor's Office. Melton later filed suit against the County, alleging that during his time there, he had arrived early and worked through lunch every day and was not compensated for overtime in violation of the Fair Labor Standards Act. The district court granted summary judgment to the County because Melton had not designated sufficient evidence to find that he worked more than forty hours in a workweek. We affirm.

## I. BACKGROUND

### A. Factual Background

Melton worked in the Tippecanoe County Surveyor's Office from July 6, 2009, through his termination on September 1, 2010. Regular work hours in the Surveyor's Office were from 8:00 a.m. to 4:30 p.m. with a one-hour floating lunch break. On May 13, 2010, Melton asked his supervisor in an email if he could take a class during work hours and "make up the 4 hours a week by only taking 1/2hour [sic] lunches and coming in 1/2hour [sic] early on T,R,F." His supervisor responded by email that Melton could take the class, but due to concerns about supervision and being able to keep track of time, he could not make up the missed time. Instead, he would have to treat the time as unpaid or as vacation time. Melton acknowledged his supervisor's answer, responding "[t]hat is fine with me."

When his class began the week of August 23, 2010, Melton worked through lunch on one day and came in early three days that week. Melton was paid for the additional time worked, but he was also terminated for failing to follow his supervi-

---

* The Honorable Pamela Pepper, of the United States District Court for the Eastern District of Wisconsin, sitting by designation.

sor's order that he could not work extra time.

## B. Procedural Background

Each week while he was employed at the Surveyor's Office, Melton would certify a timecard reporting the hours he worked. According to County records, Melton was paid for all of the hours that he certified he worked. Not so, according to Melton. Melton filed suit in state court alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), and the Indiana Wage Claim law, Ind. Code § 22–2–9–2(a). The County subsequently removed the case to federal court.

In his complaint, Melton alleged that his timecards did not accurately reflect the hours he worked because when he put his actual time worked on his timecard, the office secretary would reduce his hours to 37.5, telling him that he could not be paid for more than 37.5 hours in a workweek. Specifically, Melton claimed that he was not compensated for (1) time worked before 8 a.m. even though his supervisor told him to come to work early every day and (2) time worked through all or part of his floating lunch each day.

In support of his claim that he was not properly compensated, and in response to discovery requests, Melton produced a spreadsheet created from memory that purports to show the dates and times he worked during the whole of his employment with Tippecanoe County.

The County moved for summary judgment on several grounds. In particular, it argued that Melton "was paid for the time he certified . . . , his recollection of uncertified time is demonstrably unreliable, and . . . he did not take those steps available to him to put Tippecanoe County on notice of any allegedly inadequate compensation." (Def.'s Mot. Summ. J. 22.)

In response, Melton refused to address the County's argument that his "memory is unreliable," calling it a "premature argument" that "concerns credibility to be decided at trial." (Pl.'s Opp. to Def.'s Mot. Summ. J. 7 n.2.) Instead, Melton addressed the County's argument that it did not have knowledge of Melton's additional work hours by designating the following testimony from his deposition as evidence that he worked hours for which he was not compensated: (1) that he submitted time sheets with more than 37.5 hours to the secretary; (2) that she would return a "corrected version" with 37.5 hours; (3) that she told him he would not be paid for hours worked beyond 37.5; (4) that Melton was told by his supervisor on three occasions that he was required to be at work before 8:00 a.m.; and (5) that he spoke with his supervisor three times about working hours that were not being paid. Melton did not point to any evidence regarding unpaid lunch hours nor did he rely on his spreadsheet as evidence of his unpaid hours.

In reply, the County noted that Melton had only designated evidence related to "about twenty unpaid minutes per day before work" and no evidence of working through lunch. Therefore, the County argued, Melton only had evidence upon which a reasonable juror could find, at the most, an additional one hour and forty minutes of time worked in a week. Because that additional time would only account for a workweek of 39.2 hours, the County argued that Melton could not establish a FLSA violation, which requires the plaintiff to show uncompensated hours in excess of forty per week.

The district court agreed, and it granted summary judgment to the County. The district court found that Melton had only designated an additional one hour and forty minutes of uncompensated time. That time, the district court found, was insuffi-

cient to establish a FLSA violation because Melton had not shown that he worked in excess of forty hours per week. The district court then declined to exercise supplemental jurisdiction over Melton's state-law claim and dismissed it without prejudice. Melton appealed.

## II. Analysis

■ We review *de novo* a district court's grant of summary judgment. *Peretz v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011). Because our review is *de novo*, "we may affirm on any ground supported in the record, so long as that ground was adequately addressed in the district court and the nonmoving party had an opportunity to contest the issue." *Id.* (internal quotation marks omitted).

■ Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing whether the movant is entitled to a grant of summary judgment, we take all facts and draw all reasonable inferences in favor of the non-moving party. *Peretz*, 662 F.3d at 480; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing a properly supported motion for summary judgment, the non-moving party must "cit[e] to particular parts of materials in the record" or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).

■ FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless" it pays the employees overtime pay.

29 U.S.C. § 207(a). But, an employee who brings suit pursuant to FLSA "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded on other grounds by* Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–62.

■ Where the employee alleges that his employer kept inaccurate records, he "has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687, 66 S.Ct. 1187. At that point, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88, 66 S.Ct. 1187.

Here, Melton has called into question the accuracy of the County's records by alleging that the secretary told him he could not be paid for more than 37.5 hours per week. Melton testified that she would always "correct" his timecards to 37.5 hours if he claimed more.[1] By calling into question the accuracy of the County's records, Melton had to "produce[ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687, 66 S.Ct. 1187.

### A. Evidence of Working through Lunch

■ We note first that in his complaint, Melton alleged that he "would work

---

1. This "fact" is belied by hard evidence, which shows that Melton was paid for more than 37.5 hours in several different weeks. We assume, however, that Melton's testimony

that the secretary would correct his timesheets to 37.5 hours is sufficient evidence to withstand summary judgment as to the accuracy of the County's records.

through all or part of his lunch break." (Amended Compl. ¶ 20.) He did not, however, in his response to the County's motion for summary judgment, designate any evidence to support his claim, nor did Melton rely on his own spreadsheet as evidence of his unpaid lunch hours or respond to the County's argument that his spreadsheet was demonstrably unreliable.[2]

█ Instead of rehabilitating the spreadsheet as competent evidence of his work hours or even addressing its reliability, Melton's response was that the County's argument was "premature" and an issue of "credibility to be decided at trial." Melton is wrong. That is because

> "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." ... [That] principle is equally applicable to summary judgment, and we may state it thus: testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it.

*Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

█ In other words, a plaintiff alleging a violation of FLSA may not rely on "unsupported ipse dixit [that] is flatly refuted by the hard evidence proffered by" the defendant. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010) (alteration in original and internal quotation marks omitted). The County was permitted to "negative the reasonableness of the inference to be drawn from" Melton's spreadsheet, *Mt. Clemens*, 328 U.S. at 687–88, 66 S.Ct. 1187, which it did convincingly. Melton cannot survive summary judgment where the County negated the reasonableness of his claim of unpaid lunchtime hours, and he failed to rehabilitate his demonstrably implausible deposition "testimony by spreadsheet."

Melton testified at his deposition that the source of information for the spreadsheet was his own memory. Relying on the employee's recollection is permissible given the unlikelihood that an employee would keep his own records of his work hours. *See Mt. Clemens*, 328 U.S. at 687, 66 S.Ct. 1187; *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011). But relying on recollection does not mean the plaintiff may survive summary judgment where his recollection "is flatly refuted" by other evidence in the record, *Turner*, 595 F.3d at 690, or his story is so "internally inconsistent or implausible on its face" that "no reasonable person would believe it." *Seshadri*, 130 F.3d at 802. At the very least, an employee relying on his own recollection to prove a violation of FLSA must have a reasonably reliable story; FLSA plaintiffs are still bound to the requirements of Rule 56.

We note first that there are several weeks in Melton's spreadsheet where he

---

**2.** In response to the County's statement of facts, Melton wrote:

> Melton was told on multiple occasions that this extra time was required. *See* (Melton Dep. pp. 25, 33–35) (Mr. Melton was told on three (3) occasions by [his direct supervisor] that he was required to be at work prior to 8:00 a.m. to go to the worksite). Moreover, with regard to lunches, the testimony cited by the County does not support the alleged fact. The only testimony regarding lunches taken by Mr. Melton is from [a co-worker] who acknowledges that he rarely worked with Mr. Melton out in the field and did not pay attention to his lunch habits when working in the office. *See* (Deposition of [co-worker] pp. 21–22).

(Pl.'s Resp. to Def.'s Mot. Summ. J. 4.) Nowhere does Melton cite testimony indicating that he *did* work through lunches. The only specific facts designated relate to hours worked before 8 a.m.

seeks compensation for purportedly uncompensated hours. But contemporaneous County records show that many of those hours *were* compensated. We take, as an example, the pay period from June 1, 2010, through June 15, 2010. Melton's County time card indicates that on June 3, 2010, he worked 7.5 "regular hours" and 1 "other compensable hour[ ]" for a total of 8.5 hours worked that day. His spreadsheet indicates that he worked 8.5 hours that day but that one hour was unpaid. The same occurs on June 8, 2010. County records show that he worked and was paid for 8.5 hours; his spreadsheet indicates that he worked 8.25 hours, and that the .75 hours worked beyond the 7.5 was unpaid. It is neither a just nor reasonable inference to draw that Melton is entitled to compensation for hours already compensated.

Moreover, in his complaint, Melton alleged that he "would work through all or part of his lunch." But there is not *a single day* on his spreadsheet where he accounts for taking any portion of a lunch break. Instead, he blindly seeks compensation for every single day's lunch. His spreadsheet also indicates—and he claims—that he was *never* paid for more than 37.5 hours. That claim is blatantly contradicted by the County's payroll records, which show several occasions where Melton was compensated for hours worked beyond 37.5.

As discussed, Melton chose not to respond to the County's attack on the implausibility of his lunch-hours claim in his spreadsheet. He did so at his own risk. Because Melton's spreadsheet "testimony can and should be rejected ... [because] no reasonable person would believe it," *Seshadri*, 130 F.3d at 802, he has not produced sufficient evidence to show "the amount and extent" of the hours he worked through lunch "as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687, 66 S.Ct. 1187. Therefore,

the County is entitled to summary judgment on claims arising from allegedly unpaid lunchtime hours worked.

### B. Evidence of Arriving Early

▮ Melton did, however, provide sufficient evidence upon which a reasonable juror could conclude that he worked hours before 8:00 a.m. (at the behest of his supervisor) for which he was not compensated. Even crediting this testimony, however, does not save Melton's case. That is because the time he worked before 8 a.m. is insufficient to establish that there is a *material* dispute of fact.

In his opposition to summary judgment, Melton said he was told he would not be paid for hours worked beyond 37.5, but that he needed to come in before 8:00 a.m. In his spreadsheet, he alleges forty-five minutes per week worked before 8:00 a.m.—an additional .75 hours of time, which only brings his total workweek hours to 38.25. In his deposition, he testified that he came in about twenty minutes early every day—1 hour and 40 minutes of additional time. Ignoring the inconsistency, and even under his more generous estimate, Melton has not produced sufficient evidence to show that there is a dispute of material fact. Neither an additional 45 minutes nor 1 hour and 40 minutes per week to his 37.5 regular hours is sufficient to show that he worked *in excess of 40 hours* per week—the threshold requirement for FLSA to apply.

Melton argues that the district court (and presumably this court) cannot rely on this theory because the County did not raise it at the summary judgment stage until its reply. It is true that the specific argument advanced by the County—that Melton had only designated 39.2 hours per week—was not put forth until its reply. But there was no error in relying on the argument because Melton had a "meaningful opportunity to come forward with all of

[his] evidence" of uncompensated lunch hours—a central issue in the case. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 735–36 (7th Cir. 2006) (internal quotation marks omitted); *see also* Def.'s Mot. Summ. J. 20 ("[W]hen Mr. Melton worked through lunch, he claimed the time and was compensated for it.").

As we explained earlier, even if Melton *had* put forth his evidence supporting his claim of overtime lunch hours, his testimony by spreadsheet is so "internally inconsistent [and] implausible on its face" that it cannot satisfy Melton's burden to establish a prima facie FLSA case. *Seshadri*, 130 F.3d at 802. Melton knew that the County was arguing that his recollection and spreadsheet were "unreliable," and he certainly had a meaningful opportunity to address that argument. Instead, he deemed it "premature." It was not, and neither was the district court's grant of summary judgment.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the County.